**IN THE UNITED STATES DISTRICT COURT**
**EASTESRN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | | |
|---|---|---|
| MARK DAVIS,<br><br>Plaintiff,<br><br>vs.<br><br>SUN LIFE ASSURANCE COMPANY OF CANADA,<br><br>Defendant. | ) | Case No. 2:26-cv-1752 |

**COMPLAINT**
**29 U.S.C. § 1132(a)(1)(B)**

Now comes the Plaintiff, Dr. Mark Davis, by attorney MICHAEL BARTOLIC of BARTOLIC LAW, and complaining against the Defendant Sun Life Assurance Company of Canada, Plaintiff states:

## INTRODUCTION

1. This is an ERISA long-term disability insurance dispute under a group long-term disability insurance policy. It involves a disabled former Chiropractor who still owns the business that bought the group policy, but he can no longer work as a Chiropractor due to osteoarthritis in the wrist disallowing performing manipulations. Three years into paying the policy's maximum benefit, with 3% annual cost of living adjustment, the insurer retroactively recalculated benefits to deduct the profit from business ownership, wiping out over $2.7 million in liability.

2. The policy allows deduction of "any amount you receive from a partnership, proprietorship, or similar draws," but only if "provided as a result of the same Disability for which a benefit is payable." Three years into paying the claim where Plaintiff had earned that

business profit the whole time, Defendant began ignoring that threshold qualification and omitting it from the quoted clauses regarding deductible income when justifying the benefit reduction to Plaintiff. But the benefit reduction was a scam because Plaintiff earned that same business profit before he was disabled, making it impossible to be "provided as a result of the same Disability."

3. Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974 (hereafter "ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking long-term disability benefits due pursuant to the terms of an employee benefit plan, to enforce his rights under the terms of the plan, and to clarify rights to future benefits under the plan. Plaintiff also seeks attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## THE PARTIES

4. Plaintiff, Dr. Mark Davis ("Dr. Davis"), is a former practicing Chiropractor, and the owner of Chiropractic First. Chiropractic First sponsors an employee welfare benefit plan, as that term is defined in 29 U.S.C. § 1002(1), which provides long-term disability insurance benefits to certain employees. Chiropractic First bought a group long-term disability insurance policy to fund the benefits under the plan. Incident to his employment with and ownership of Chiropractic First, Dr. Davis received long-term disability insurance coverage under the plan as a "participant," as that term is defined by 29 U.S.C. § 1002(7).

5. Defendant Sun Life Assurance Company of Canada ("Sun Life") insures the plan through group insurance policy number 927089-001, which is attached as Exhibit 1. The policy contains a certificate of insurance describing the coverage, which is attached as Exhibit 2. Sun Life is the claim review fiduciary of the plan, insures the plan, and is responsible for paying any benefits under the plan. Sun Life suffers from a structural conflict of interest because of this dual

role of deciding benefit claims and responsibility to pay the approved claims, and that conflict of interest infected its decision on Dr. Davis's claim, apparent in its attempt to change the policy terms on Dr. Davis's claim to save itself $2.7 million.

**JURISDICTION AND VENUE**

6. The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132(a).

7. At all relevant times, Chiropractic First been and continues to be located in Mukwonago, Wisconsin, which is where the plan is administered. Venue is thus proper in the United States District Court for the Eastern District of Wisconsin. 29 U.S.C. § 1132(e)(2).

8. The ERISA statute provides a mechanism for administrative or internal appeals of adverse determinations of benefit claims at 29 U.S.C. § 1133. All required avenues of appeal to exhaust the administrative claim review process have been completed, and this matter is ripe for litigation.

**STATEMENT OF FACTS**

9. Dr. Davis is a participant under the plan and in an eligible class of participants under the group insurance policy. As a participant, Dr. Davis was entitled to long-term disability benefits set forth in the governing insurance policy. Dr. Davis's classification under the policy is Classification 1 applicable to "All Eligible Owner Chiropractors." (Ex. 2 at 5).

10. The policy pays a disabled participant 60% of "Total Monthly Earnings" up to a maximum gross benefit of $10,000 per month, with a 3% per year Cost of Living Adjustment

that applies each anniversary of the benefit start date as long as the participant receives a Total Disability benefit, and it is not subject to the policy's maximum benefit. (Ex. 2 at 5, 21).

11. For an Owner Chiropractor, the insured "Total Monthly Earnings" include both the owner's wages and pass-through business income. Specifically,

> 1/12 of the amount you reported as ordinary business income on IRS Form 1120s Schedule K for the previous calendar year plus your average monthly earnings reported on the W-2 form (the box which reflects wages, tips, and other compensation) received from your Employer for the previous calendar year immediately before the first date your Total or Partial Disability begins or the average monthly earnings for your period of employment if employed for less than a full calendar year.

(Ex. 2 at 5).

12. Under the insurance policy, "**Disability and Disabled**" means: "you are Totally Disabled or Partially Disabled. If a particular occupation requires a license, you will not be considered Disabled solely because you are unable to obtain a license or continue to qualify for a license." (Ex. 2 at 10).

13. For all Eligible Chiropractors, "**Total Disability and Totally Disabled** means you are unable to perform one or more of the Material and Substantial Duties of your Regular Occupation." (Ex. 2 at 15).

14. For all Eligible Chiropractors, "**Partial Disability and Partially Disabled**" means you:

- are unable to perform one or more of the material and substantial duties of your Regular Occupation on a Full-time Basis; and
- have Disability Earnings of less than 80% of your Indexed Total Monthly Earnings.

The Disability must be the material and substantial factor in causing the earnings loss.

(Ex. 2 at 13).

15. **"Disability Earnings** means the income you receive from work performed while Partially Disabled or while participating in a Rehabilitation Program. Disability Earnings does not include income you receive from work performed prior to your Disability, nor income that is not derived from work performed while Disabled." (Ex. 2 at 11).

16. The policy terms regarding calculating the benefit in the event of Partial Disability state: "If you are earning 20% or less of your Indexed Total Monthly Earnings, a Total Disability Benefit will be paid. The Benefit will never be less than the Minimum Benefit shown in the Benefit Highlights unless specified in Adjustment of Benefits." (Ex. 2 at 18–19).

17. For all eligible Chiropractors, the benefit calculation for Total Disability "subtract[s] all Deductible Sources of Income from the lesser of . . . the Benefit Percentage multiplied by your Total Monthly Earnings; or . . . the Maximum Benefit." (Ex. 2 at 18).

18. While Disabled, Dr. Davis had and continues to have "Disability Earnings," but those Disability Earnings are less than 20% of his Indexed Monthly Earnings, resulting in him receiving a Total Disability benefit.

19. **"Other Income** means those benefits or sources of income that are provided or available while you are receiving a benefit under the Policy. Other Income includes Deductible Sources of Income and Non-deductible Sources of Income. Other Income includes any benefits that would have been available to you had you applied for that benefit. Except for benefits payable under a Retirement Plan, Other Income must be provided <u>as a result of the same Disability</u> for which a benefit is payable." (Ex. 2 at 13 (emphasis added)).

20. The policy then identifies "Deductible Source of Income" applicable to Owner Chiropractors as "Other Income that is deducted from your Gross Benefit as described in the 'Other Income' provisions. Deductible Sources of Income include . . . ." (Ex. 2 at 9). The

provision then lists categories of income that can be Deductible Sources of Income. (Ex. 2 at 18–19). The first 14 categories all, by their own description, can only be received as a result of disability, separation from employment, or other compensation for lost time at work. (Ex. 2 at 18–19). The 15th and final category is “any amount you receive from a partnership, proprietorship or similar draws.” (Ex. 2 at 19).

21. Prior to his disability, Dr. Davis was a Chiropractor and the sole owner of Chiropractic First.

22. On July 1, 2021, Dr. Davis became disabled due to right wrist arthritis that precluded him from being able to meet the demands of his occupation as a Chiropractor in that he could not perform adjustments to the degree required.

23. After becoming disabled, Dr. Davis ceased working as a Chiropractor, but continued owning Chiropractic First manage it on a part-time basis, paying himself wages to do so.

24. On December 27, 2022, Sun Life’s outside account, Jeffrey Bannon, CPA reviewed Dr. Davis’s financial information and calculated Dr. Davis’s “Total Monthly Earnings” and Total Disability Benefit. (Ex. 3). In 2020, the year before disability, Dr. Davis had W-2 earnings of $60,000 and the S corporation business income from Chiropractic First reported to Dr. Davis on Schedule K was $392,220 for a total of $452,220 insured, or “Total Monthly Earnings” of $37,685. Accordingly, Dr. Davis’s benefit was the policy maximum of $10,000 per month.

25. Mr. Bannon advised Sun Life Chiropractic First’s payroll records show Dr. Davis continued being paid wages by Chiropractic First after the date of disability, with an increase in

wages from $5,000 per month prior to June 15, 2022, and $6,250 per month beginning on June 15, 2022. (Ex. 3).

26. The policy includes a Cost of Living Adjustment that increases the benefit amount 3% on every anniversary of the benefit start date. (Ex. 2 at 21). Sun Life prepared a calculation of what it contends it overpayment was documenting the 3% increase per year in 2022 and 2023. (Ex. 4). Accordingly, on September 29, 2022. Dr. Davis's benefit amount increased to $10,300 per month, on September 29, 2023, it increased to $10,609.00 per month, on September 29, 2024 it increased to $10,927.27, and was scheduled to increase to $11,255.09 on September 29, 2025, and increase to $11,592.74 per month on September 29, 2026.

27. In a phone call with Sun Life on December 16, 2022 while it was reviewing Dr. Davis's claim, Dr. Davis advised Sun Life he still owns First Chiropractic, and that it still generates income, though revenue is down $150,000–$200,000.

28. Sun Life raised no concern about the wages paid or continued ownership of Chiropractic First, but instead requested Dr. Davis attend an independent medical examination. The examiner advised Sun Life Dr. Davis cannot perform manipulations due to the osteoarthritis in his wrist.

29. On April 4, 2023 Sun Life approved Dr. Davis's claim from September 29, 2021 through November 22, 2022, pending further review for benefit eligibility thereafter, requesting updated medical information. Sun Life stated nothing about needing to submit further business tax returns for financial eligibility. (Ex. 5).

30. On January 23, 2024, Sun Life's accountant, Jeffrey Bannon, CPA, performed a financial review of Dr. Davis's 2022 business and personal income. Mr. Bannon documented in 2022, Dr. Davis had $68,125 in W2 wages from Chiropractic First and $282,588 in business

income earned by First Chiropractic reported on Dr. Davis's Schedule K. Mr. Bannon raised no issue with this business income affecting Dr. Davis's disability benefit.

31. On July 2, 2024, Mr. Bannon wrote Sun Life another letter, this time giving his opinion on the interpretation of the policy that Dr. Davis's business income from Chiropractic First constitutes a "similar draw" under "Deductible Sources of Income." Mr. Bannon did not acknowledge this income must first be "as a result of" Dr. Davis's disability, as required of all "Other Income."

32. In November 2024, Sun Life requested a clinician review to determine if Dr. Davis was still medically disabled, and its in-house medical consultant Cheryl Slavin, RN, BSN advised the claim examiner that absent surgery, Dr. Davis would remain disabled.

33. Sun Life also requested Dr. Davis provide his 2023 tax returns, which he provided to Sun Life on January 3, 2025.

34. On January 14, 2025, Jeffrey Bannon, CPA performed a review of financials for Sun Life again, and gave his opinion that Dr. Davis's reported business income from Chiropractic First on his Schedule K was a Deductible Source of Income under Dr. Davis's policy, calling it a "similar draw." Once again, Mr. Bannon ignored the requirement any such income must first be "Other Income," which requires it be "as a result of" the disability, and Dr. Davis's business income from Chiropractic First preceded the disability.

35. On February 26, 2025, Sun Life notified Dr. Davis in writing that his monthly benefit had been incorrectly calculated and reduced to the minimum policy benefit of $1,000 per month, also creating an overpayment retroactive to January 1, 2022. (Ex. 6). Sun Life contended that Dr. Davis's pass-through income from owning Chiropractic First was a "Deductible Source

of Other Income" which reduced the gross disability benefit to the minimum. The letter constitutes an adverse benefit determination within the meaning of ERISA's regulations.

36. The letter does not address how business income Dr. Davis had from owning the business even before disability could meet the definition of "Other Income," which must result from the disability.

37. Dr. Davis requested the documents relevant to the claim, and the applicable claim guidelines. On March 7, 2025, the claim examiner sent Dr. Davis a letter listing the applicable guidelines. (Ex. 7). On the first page of the letter, it provided the guideline for "Other Income Benefits for LTD" which stated right in the introduction the Other Income "must be provided as a result of the same Total or Partial disability payable under this Policy." Yet Sun Life paid no attention to this condition at all, at any point during its claim review.

38. On May 14, 2025, Dr. Davis submitted to Sun Life a timely appeal of the February 26, 2025 adverse benefit determination, requesting reinstatement of his benefit to $10,927.27 per month. (Ex. 8).

39. On July 10, 2025, Jeffrey J. Bannon, CPA performed a financial review for Sun Life, reiterating his opinion Dr. Davis's 2022 and 2023 business income from Chiropractic First were "a similar draw" within the policy's definition of "Deductible Sources of Income.

40. On August 4, 2025, Dr. Davis wrote Sun Life explaining Chiropractic First business income reported to him is not a Deductible Source of Income, notwithstanding being able to be characterized as a "similar draw" because the policy is not intended to reduce benefits by the insured owner's business income from the policyholder, which was insured income in Total Monthly Earnings, and such income did not arise after disability.

41. On August 7, 2025, Sun Life upheld its adverse benefit determination to reduce Dr. Davis's disability benefit to the minimum benefit, constituting a final administrative decision on Dr. Davis's long-term disability benefit amount. (Ex. 9). Sun Life rejected Dr. Davis's contentions regarding the policy language, contending Chiropractic First's business income reported to Dr. Davis constitute Deductible Sources of Income as "similar draws," but it never explains how such income is "Other Income" in the first place.

42. Plaintiff exhausted required pre-litigation remedies under the policy and ERISA regulations, and all conditions precedent to the filing of this action have been performed or have occurred.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in favor of the Plaintiff and against Defendant, and award Plaintiff all past due long-term disability benefits, and order reinstatement of Plaintiff's benefit amount at the policy maximum plus the annual Cost of Living Adjustments;

B. That the Court declare Defendant has never overpaid Plaintiff long-term disability insurance benefits;

C. That the Court order the Defendant to pay Plaintiff prejudgment interest on all benefit payments withheld prior to the date of judgment;

D. That the Court declare Defendant may not in the future characterize Plaintiff's business income from Chiropractic First as Deductible Sources of Income under the policy;

E. That the Court award Plaintiff reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit; and

F. That the Plaintiff recovers any and all other relief to which he may be entitled.

Respectfully Submitted,

/s/ Michael Bartolic
Attorney for the Plaintiff

Michael Bartolic
Bartolic Law
180 W. Washington Street Suite 700
Chicago, Illinois 60602
Tel: 312-635-1600
Fax: 312-635-1601